UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-cv-00117-TBR

GARY GORDON                                                                                          PLAINTIFF

v.

SWIFT TRANSPORTATION SERVICES, LLC                                                  DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant Swift Transportation Services, LLC's, ("Swift"), Motion to Dismiss. [DN 5.] Plaintiff, Gary Gordon, ("Gordon") has responded. [DN 6.] Swift has replied. [DN 7.] As such, this matter is ripe for adjudication. For the reasons that follow, Swift's Motion to Dismiss [DN 5] is **GRANTED**.

**I. Background**

Gordon brought this claim alleging both disparate impact and disparate treatment in violation of the Americans with Disabilities Act ("ADA"). He also alleges violation of the Kentucky Civil Rights Act. Gordon applied for employment with Swift in September of 2018. Swift's application asks if the applicant has ever used an illegal drug. Gordon "used marijuana to dull the pain of his depression" for several years. Gordon stated on his application that he had used illegal drugs.

A recruiter from Swift followed up with Gordon on September 4, 2018 to inquire about his drug use. Gordon stated he last used marijuana on December 1, 2017, nine months prior. That same day, Swift denied employment to Gordon due to "his history of having been an illegal user of drugs" in accordance with its policy not to hire any person who has used illegal drugs within three years of submitting an application.

## II. Legal Standard

In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

When applying the Rule 12(b)(6) standard, the court must presume all of the factual allegations in the complaint are true. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield,* 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S. at 679. The Court may dismiss the case "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal,* 556 U.S. at 677-79).

## III. Discussion

### A. *Prima Facie* Case of Disability Discrimination

Swift argues Gordon cannot establish a *prima facie* case of disability discrimination. In order to establish a *prima facie* case, a plaintiff must show: "(1) he was "disabled;" (2) he was otherwise qualified to perform the essential functions of the job; (3) he suffered an adverse employment action (4) his employer knew or had reason to know of his disability; and (5) either

the position remained open or a non-disabled person replaced him." *Brenneman v. Medcentral Health Sys.*, 366 F.3d 412, 417 (6th Cir.2004).

### 1. Was Gordon Disabled

The ADA defines disability as: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3)). 42 U.S.C. § 12102(1). Gordon must be covered by one of these definitions to show a *prima facie* case. Gordon relies on the "regarded as" prong.

An individual meets the regarded as prong "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3).

42 U.S.C. § 12114(a) excludes individuals "currently engaging in the illegal use of drugs" from the definition of a qualified individual with a disability. However, it does not exclude one who: "(1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use; (2) is participating in a supervised rehabilitation program and is no longer engaging in such use; or (3) is erroneously regarded as engaging in such use, but is not engaging in such use". 42 U.S.C. §12114(b). "[A]n erroneous belief about drug use will only be a qualifying disability if the employer regarded the perceived drug use as an impairment and took action against the employee because of that perceived impairment." *Bailey v. Real Time Staffing Services, Inc.,* 927 F.Supp.2d 490, 499 (W.D. Tenn. 2012) (citing 42 U.S.C. § 12102(3)(A).

Swift argues Gordon must show he had an impairment that substantially limited a major life activity to be protected as a qualified individual with a disability. However, case law since the 2008 amendments contradicts Swift's argument. "Before the [2008] amendments, a plaintiff had to show that he or she was regarded as having an impairment that substantially limited a major life activity." *Bailey*, 927 F. Supp. 2d at 496. "An employee must now only demonstrate that he or she was subjected to an action prohibited by the ADA because of actual or perceived physical or mental impairment, regardless of whether the impairment limits or is perceived to limit a major life activity." *Id*. at n.5. "[I]t is not enough that the employer is simply aware of a plaintiff's symptoms; rather the plaintiff must show that the employer regarded the individual as 'impaired' within the meaning of the ADA. *Baum v. Metro Restoration Servs., Inc*., 240 F. Supp. 3d 684, 693 (W.D. Ky. 2017) (citing *Neely,* 640 Fed. Appx. at 435-436). The Sixth Circuit has held "an employee need only show that their employer believed they had a physical or mental impairment, as that term is defined in federal regulations." *Babb v. Maryville Anesthesiologists P.C.,* 942 F.3d 308, 319 (6th Cir. 2019). The Court went on to state:

> We have recognized this amended standard before, albeit not in a published decision. *See Baum v. Metro Restoration Servs., Inc*., 764 F. App'x 543, 547 (6th Cir. 2019); *Neely v. Benchmark Family Servs*., 640 F. App'x 429, 435 (6th Cir. 2016); *Bailey v. Real Time Staffing Servs*., 543 F. App'x 520, 523 (6th Cir. 2013). Our sister circuits have done likewise, in published decisions. *See, e.g., Mancini,* 909 F.3d at 45–46; *Alexander v. Washington Metro. Area Transit Auth*., 826 F.3d 544, 547–48 (D.C. Cir. 2016); *Adair v. City of Muskogee*, 823 F.3d 1297, 1304–06 (10th Cir. 2016); *Cannon v. Jacobs Field Servs. N. Am., Inc*., 813 F.3d 586, 591–92 (5th Cir. 2016); *Silk*, 795 F.3d at 706. To the extent we have issued decisions in recent years holding to the contrary—and, regrettably, we have—that was error. *See Ferrari*, 826 F.3d at 893; *Johnson v. Univ. Hosps. Physician Servs.,* 617 F. App'x 487, 491 (6th Cir. 2015).

*Babb,* 942 F.3d at 319. The federal regulations define physical or mental impairment as:

> (1) [a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive,

4

> digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or
>
> (2) any mental or psychological disorder, such as an intellectual disability…organic brain syndrome, emotional or mental illness, and specific learning disabilities."

29 C.F.R. § 1630.2(h).

Here, Swift states "[p]laintiff does not allege that using marijuana caused him any physical or psychological impairments or problems of any kind." [DN 501 at 6.] However, Gordon does not have to prove he suffered any actual impairments to be successful on his claim. Gordon only needs to prove Swift regarded him as suffering such an impairment. The Court finds when drawing all reasonable inferences in the complaint in favor of Gordon, Gordon has pled enough facts to allege Swift regarded him as being impaired—and therefore disabled—at this stage of litigation.

### 2. Was Gordon Qualified

"The term "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The Court must give consideration "to the employer's judgment as to what functions of a job are essential". *Id.* Swift has a policy of not hiring any person who has used illegal drugs within three years of submitting an application.

Federal regulations govern who is qualified to operate a commercial motor vehicle. "A person is physically qualified to drive a commercial motor vehicle if that person "[d]oes not use any drug or substance identified in 21 CFR 1308.11 Schedule I, an amphetamine, a narcotic, or other habit-forming drug." 49 C.F.R. § 391.41(b)(12)(i). Marijuana is classified as a Schedule I drug. Therefore, one who currently uses marijuana is not a qualified individual.

Swift cites to an unpublished case to argue Gordon was not qualified for the job. In *Scott v. Genuine Parts Co.,* Scott was a licensed truck driver who applied for employment with Genuine

5

Parts. 2002 WL 171729 *1 (S.D. Ind. Feb. 1, 2002). Scott had three felony convictions and was terminated from her last job for failing a drug test. *Id.* Genuine Parts did not offer her employment. *Id.* Scott sued under Title VII for sex discrimination. *Id.* However, a *prima facie* case of sex discrimination also requires proof that the plaintiff was qualified for the position. Genuine Parts had a policy of not hiring individuals with "felony convictions or who have been terminated for failing a drug test." *Id.* at 4. The Court found that "Scott's admitted drug use renders her unqualified in light of Department of Transportation regulations." *Id.* at 5.

Here, it is undisputed that Gordon used marijuana nine months prior to applying for a job with Swift. Gordon argues Swift's policy not to hire one who has used drugs within three years of applying serves no legitimate business necessity. Federal regulations prohibit hiring one who is currently using drugs. "[C]urrently engaging is not intended to be limited to the use of drugs on the day of, or within a matter of days or weeks before, the employment action in question." 29 C.F.R. § Part 1630, Appendix. However, there is no clear definition of what 'use' means. Swift has a duty under the regulations to help prevent accidents that would occur from employing those who use illegal drugs. *See* 49 C.F.R. § 382.101. Employers may administer drug tests to determine whether one is engaged in drug use, but they are not required to do so. *See* C.F.R. § 1630.3(c); 29 C.F.R. § 1630 Appendix ("Employers are entitled to seek reasonable assurances that no illegal use of drugs is occurring or has occurred recently enough so that continuing use is a real and ongoing problem."). Gordon admitted to using drugs within three years of applying and therefore did not meet Swift's hiring requirements. Gordon cannot show he was qualified to perform the job. Since Gordon cannot show he was qualified, he has not shown a *prima facie* case and his claim must be dismissed.

In this opinion, the Court does not make a ruling on the reasonableness of Swift's three-year policy. However, the Court does find that it is reasonable for Swift to deem Gordon as unqualified due to his history of drug use nine months prior to application. The Court agrees with Swift's argument that a ruling to the contrary could potentially subject Swift to conflicting liability, specifically for negligent hiring claims. Based on the facts present before the Court, Gordon was unqualified for the position.

**B. Disparate Impact**

Swift argues Gordon's disparate impact claim should be dismissed because he did not raise the claim in his EEOC charge and he failed to plead sufficient facts to support his claim. "[A]n individual must first file a charge of discrimination with the EEOC as a prerequisite to filing a civil action." *Winchester v. Wal-Mart Stores Inc.,* No. 5:15-CV-00025-TBR 2015 WL 3903673, *5 (W.D. Ky. June 25, 2015) (citing *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir.1998)). "However, courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Id*. "This allowance stems from the fact that an EEOC charge is normally filed by lay complainants who are unschooled in the technicalities of the law and proceed without counsel." *Id.* (citing *Tisdale v. Fed. Express Corp.,* 415 F.3d 516, 527 (6th Cir. 2005)).

"To state a disparate impact claim, an employee must identify an employer's "facially neutral policy" and show that it has an adverse impact on a protected group." *Winchester*, 2015 WL 3903673, at *5. "It is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is "'responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.'" *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005).

7

Here, Swift's policy is not mentioned in the "particulars" section of the Charge of Discrimination. That section reads in its entirety:

> "In or around early September 2019, I applied for a Driver position with Swift Transportation. On or about September 4, 2018, I was contacted by Joey Fowler, a Driver Recruiter for Swift Transportation, who instructed me to provide more information. I provided the information which included information regarding my disability or record of a disability. Later that day Mr. Fowler rejected my application because of this information.
>
> The reason given to me for not qualifying for a position was because of my disability or record of a disability.
>
> I believe that I and a class of employees have been discriminated against based on our disability, record of disability or perception of being disabled, in violation of the Americans with Disabilities Act of 1990, as amended."

[DN 5-2 at PageID 35.] In *Winchester,* in the EEOC Charge, the plaintiff stated, "During the past year, I observed older persons are hired into more laborious and lower pay level positions, while younger persons have been hired into higher pay level positions." 2015 WIL 3903673 at *6. This Court found "[t]his statement is not enough to support a disparate impact claim". *Id.* Here, the Court finds that statement Gordon made is similar to the one in *Winchester* and therefore, he did not raise the claim in the EEOC charge. Gordon stated he was discriminated against along with a class of employees. That is no different than Winchester stating older people—a class of employees—were given worse positions than younger people. The Court in *Winchester* applied a heightened pleading standard because Winchester was a disbarred attorney. *Id.* at 5. Even without applying the heightened standard, this Court cannot find Gordon properly raised this claim in the charge. Therefore, this claim must be dismissed.

Swift further argues even if Gordon did raise the claim in the EEOC Charge, the Complaint does not show a *prima facie* case of disparate impact. The Court need not address this argument as it has dismissed Gordon's claim on other grounds.

## IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that Swift's Motion to Dismiss [DN 5] is **GRANTED**.

A judgment will follow.

**IT IS SO ORDERED**.

**Thomas B. Russell, Senior Judge
United States District Court**

April 3, 2020

cc: counsel